UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VINCENT DANIEL HOPPER, AKA ANTOLIN MARKS,<br><br>        Plaintiff,<br><br>        v.<br><br>JOHN DOE MYERS RECREATIONAL COACH NORTHWEST DETENTION CENTER *et al.*,<br><br>        Defendants. | Case No.  C05-5680RBL<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR:**<br>**OCTOBER 27**[h] **, 2006** |

This <u>Bivens</u> action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Before the Court is defendant's motion to dismiss under Fed R. Civ P 12 (b)(6) or in the alternative for dismissal pursuant to Fed, R. Civ. P 56 (c).  (Dkt. # 94).  As defendants previously filed a motion to dismiss the court considers this motion as a summary judgment motion.  (Dkt. # 67).

In the current motion defendants argue:

    1.    Failure to exhaust administrative remedies under the Prison Litigation Reform Act.

    2.    Failure to prove denial of access to court because of lack of actual injury.

(Dkt. # 94).

REPORT AND RECOMMENDATION
Page - 1

Defendants analyze plaintiff's access to court action under four separate areas: access to the law library, law library contents, the telephone system, and photo copying. The defendants motion and combined memorandum is 15 pages long and complies with local rules regarding the length of motions. See, Local Rule 7(e)(3). Plaintiff has filed two documents in opposition to the summary judgment motion. The first document is "Plaintiff's statement of undisputed facts in support of opposition to the Defendant's motion for summary judgment." This document is 10 pages long and complies with the courts local rule limiting a response to a motion for summary judgment to 24 pages. Plaintiff's second filing is a memorandum in opposition to summary judgement.. (Dkt. # 104). This filing does not comply with the local rules for two reasons. First, only one responsive pleading is allowed. Second, the document contains 60 pages of argument while the local rules limit briefing to 24 pages. See, Local Rule 7(e)(3).

The court has considered plaintiff's filings. The plaintiff is warned that any other filing that is over length will not be considered without the prior grant of a motion to file an over length brief. Further, filing of any further over length brief without prior approval may result in monetary sanctions.

The court notes that plaintiff has filed a motion for joinder, (Dkt. # 101) seeking to include 6 other named detainees and "all others similarly situated within the facilities run by BICE and in ....". Plaintiff moved for class certification at the beginning of this litigation and his motion was denied. (Dkt. # 54). Further, this motion is 36 pages long. This motion will be addressed by a separate order.

## DISCUSSION

A.   The summary judgment standard.

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not

REPORT AND RECOMMENDATION
Page - 2

simply "some metaphysical doubt."). <u>See also</u> Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 253 (1986); <u>T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association</u>, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. <u>Anderson</u>, 477 U.S. at 254; <u>T.W. Elec. Service Inc.</u>, 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. <u>Id</u>.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. <u>T.W. Elec. Service Inc.</u>, 809 F.2d at 630.(relying on <u>Anderson</u>, *supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990). It is with this standard firmly in mind that the court considers this motion and plaintiff's opposition to the motion.

  B. <u>Exhaustion of Administrative Remedies</u>.

Defendant's argue plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act. (Dkt. # 94). Defendants acknowledge plaintiff is not a prisoner and state:

> But the PLRA does not specifically apply to immigration detainees because they are not included in the definition of "prisoner" in the Act. <u>See</u> <u>Ojo v. Immigration and Naturalization Service</u>, 106 F.3d 680, 682 (5th Cir.1997). Nevertheless, immigration detainees at the NWDC, such as Plaintiff, should be required to exhaust available administrative remedies for grievances before seeking redress in district court. The detainee grievance procedure at the NWDC is equipped to address the types of grievances raised by Plaintiff and operating officials have the power to grant Plaintiff injunctive relief or make the necessary changes to resolve Plaintiff's grievances. As such, Plaintiff should be required to exhaust his administrative remedies before asking this Court to resolve his grievances.
>
> Where Congress has not clearly required exhaustion, sound judicial discretion governs. <u>See</u> <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992). "In determining whether exhaustion is required, federal courts must balance the interests of the individual in retaining prompt access to a federal judicial forum against the countervailing institutional interests favoring exhaustion."<u>Id</u>. at 146. Administrative exhaustion rules have two principal purposes. The first is to protect an administrative agency's authority by giving the agency

REPORT AND RECOMMENDATION
Page - 3

>the first opportunity to resolve a controversy before a court intervenes in the dispute. See Id. at 145-46. The second is to promote judicial efficiency by either resolving the dispute outside of the courts, or by producing a factual record that can aid the court in processing a plaintiff's claim. Id.

(Dkt. # 94 page5). The two policy considerations argued by defendants are compelling at first glance. However, defendants cite no authority where any court has mandated exhaustion of administrative remedies for an INS detainee.

Plaintiff argues he is not an inmate and cites to a number of cases that have held the payment provisions of the Prison Litigation Reform Act do not apply to INS detainees because they are not prisoners. Ojo v. INS., 106 F.3rd 680 682 (5th Cir. 1997); Agyeman v. INS., 296 F.3d 871, 876 (9th Cir. 2002); (Agyeman noted the provision might apply if the detainee was also facing criminal charges); Page v.Torrey, 201 F.3d 1256, 1260 (9th Cir. 2000) (refusing to apply the filing fee provision to civilly committed sexual predators because they are not prisoners). While instructive, the cases cited by plaintiff are not controlling. The issue in those cases was application of the payment provision of the Prison Litigation Reform Act, not the requirement to exhaust administrative remedies.

The cases cited by plaintiff in the paragraph above are instructive because they utilize the definition section of the Prison Litigation Reform Act to determine the acts scope. The argument is that if Congress had intended to include INS detainees or civilly committed persons such as sexual predators in the act, congress would have defined the act to include them.

The court acknowledges it may have the authority to require exhaustion in an individual case. However, a blanket ruling that exhaustion of administrative remedies is mandated for INS detainees, would amount to legislation from the bench. The definition section of the Prison Litigation Reform Act excludes the plaintiff. The court should decline to dismiss this action for failure to exhaust.

In his responsive briefing plaintiff moves for sanctions because "the Motion is frivolous." (Dkt. # 104, page 7). The undersigned finds the motion was made in goof faith. While the court declines to adopt defendant's position, the court acknowledges the logic of the argument made. The court should decline to impose sanctions.

B.    Access to Courts overview.

The United States Supreme Court has held that prisoners have a constitutional right of meaningful access to the courts premised on the Due Process Clause. Bounds v. Smith, 430 U.S. 817, 821 (1977).

1 Here, plaintiff must rely on his Fifth Amendments right to due process.  The Fourteenth Amendment does
2 not apply to the Federal government as the Amendment prohibits any state from abridging an immunity or
3 privilege and specifically states "nor shall any State deprive any person of life, liberty, or property...".

4 Access to courts requires authorities to "assist inmates in the preparation and filing of meaningful
5 legal papers by providing prisoners with adequate law libraries or adequate legal assistance from persons
6 trained in the law."  Bounds, 430 U.S. at 828 (emphasis added); Storseth v. Spellman, 654 F.2d 1349,
7 1352 (9th Cir. 1981).   The court recognizes that the plaintiff is not an inmate in the normal sense of the
8 term.  The analysis on this issue is identical becqause the analysis defines the constitutional minimum.

9 The Ninth Circuit has determined that "right of access" claims that do not allege inadequacy of the
10 law library or inadequate assistance from persons trained in the law, must allege an "actual injury" to court
11 access.  Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989).  An "actual injury" consists of some specific
12 instance in which an inmate was actually denied access to the courts.  Id.  Only if an actual injury is alleged
13 may plaintiff's claim survive.  Id.  This follows the Supreme Courts reasoning.  In order to establish a
14 violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual
15 injury.  See Lewis v. Casey, 518 U.S. 343  (1996).  To prove actual injury, a prisoner must demonstrate
16 that the alleged shortcomings in the library or legal assistance program hindered efforts to pursue a legal
17 claim.  Id., at 351.

18 In Lewis v Casey the court gave examples of what constitutes actual injury.  Lewis v. Casey, 518
19 U.S. 343, 351 (1996).  Defendant's quote these examples in the motion for summary judgment. (Dkt. #
20 94 page 7).  The examples include having a complaint dismissed because of a failure to satisfy a technical
21 requirement or being unable to even file a complaint.

22     1.    <u>Access to the law library</u>.

23 Plaintiff claims his access to the law library is insufficient.  Defendants state:

24 Plaintiff cannot establish that the NWDC's law library access policy resulted in an actual injury under Bounds. The NWDC's law library access policy is set forth in the
25 Standard Statement of Work for Contract Detention Facilities in the contract between ICE and Geo.  The relevant portions of the current contract are attached as Exhibit B. The
26 NWDC's law library access policy is also in accordance with INS National Detention Standards. The relevant portions of the National Detention Standards, Access to Legal
27 Materials, is attached as Exhibit C. Facilities holding ICE detainees shall permit detainees access to a law library, and provide legal materials, facilities, equipment and document
28 copying privileges, and the opportunity to prepare legal documents. See Exhibit C, pg. 1.

REPORT AND RECOMMENDATION
Page - 5

The facility shall devise a flexible schedule to permit all detainees, regardless of housing or classification, to use the law library on a regular basis. Detainees shall be permitted to use the law library for a minimum of five (5) hours per week. Requests for additional time in the law library shall be accommodated to the extent possible, consistent with the orderly and secure operation of the facility. Special priority should be given to requests for additional library time when a detainee is facing a court deadline. See Exhibit C, pg. 3.

Supervisory Detention & Deportation Officer ("SDDO") Michael Melendez has testified that the NWDC's law library access policy conforms to the INS National Detention Standards. See Declaration of SDDO Melendez. Plaintiff has received these minimum privileges as well as additional privileges above and beyond the minimum five (5) hours per week. In fact, Plaintiff has been allowed a minimum of ten (10) hours per week since May 2006. In addition to the ten (10) hour minimum that Plaintiff has been allowed, he has also requested additional time in the law library to meet court deadlines. These requests have routinely been granted. Plaintiff has also requested additional time in the law library to assist other detainees in completing legal research and drafting legal pleadings. And these requests have routinely been granted. In fact, Plaintiff currently averages twenty-four (24) to twenty-seven (27) hours per week in the law library at the NWDC. See Declaration of SDDO Melendez.

Plaintiff claims that he has been prevented from filing two actions in Federal court and one action in State court and that he did not have the necessary tools to continue his pending legal challenges (Dkt. #1 at pgs. 4, 8). But Plaintiff has failed to show that his access to the courts was actually hindered or impeded by the NWDC's policies. In fact, the numerous civil suits, pleadings, and motions Plaintiff has been able to successfully bring and vigorously prosecute in both District Court as well as Immigration Court, show that he has had sufficient access to the courts while detained at the NWDC.

Since entering the NWDC in August 2005, Plaintiff has filed at least eight cases in the Western District of Washington. See Hopper v. Roach, 05-01812-RSL-MAT2; Hopper v. Wigen, et. al., 05-05662-FDB-KLS; Hopper v. Doe 1, et. al., 06-05057-FDB; Hopper v. Morrison, et. al., 06-05058-FDB-JKA; Hopper v. Martin, et. al., 06-05085-RBL-JKA; Marks v. Clark, et. al., 06-0717-RSL-MAT; Hopper v. Clark, et. al., 06-5282-RBL-KLS. These cases include a habeas petition challenging Plaintiff's detention pending removal, raising a citizenship claim, and seeking a stay of removal proceedings (05-01812); a civil rights complaint seeking free postage and unlimited copies for all legal documents for inmates, as well as revision of the mail policies at the NWDC (05-05662); a civil rights case challenging Plaintiff's deportation and raising due process claims and Fifth and Fourteenth Amendment claims (06-05057); a civil rights and Bivens case challenging the food and diet conditions at the NWDC, and seeking access to several medical procedures (06-05058); a petition for injunctive and declaratory relief seeking to compel from U.S. Probation a copy of Plaintiff's probation file (06-05085); a Bivens case challenging confiscation of Plaintiff's mail and denial of due process (06-05282); a second habeas petition challenging Plaintiff's confinement and raising citizenship claims (06-00717); and this instant civil rights case challenging the law library access policies at the NWDC.

In each of the above cases, which Plaintiff was able to successfully file while detained at the NWDC, Plaintiff has been able to obtain leave to proceed *in forma pauperis* and has vigorously prosecuted these cases. Plaintiff files pleadings and motions in these cases on a regular basis, including but not limited to: motions for appointment of discovery officers; motions for class certification; motions for default judgment; motions to compel discovery; motions to stay immigration proceedings; and motions for release from custody.

Plaintiff has also filed numerous pleadings and raised various claims in Immigration Court. See Hopper v. Roach, et. al., 05-01812, Dkt. #41. And in his Complaint, Plaintiff

REPORT AND RECOMMENDATION
Page - 6

    identifies ten (10) additional cases that he is "currently litigating" administratively as well as in the Ninth Circuit Court of Appeals, the Eastern District of California, the Northern District of California, and the United States Supreme Court (Dkt. #1, pg. 6-7). A quick review of the docket sheets for just the eight cases pending in this District demonstrates that Plaintiff has had sufficient access to the courts while detained at NWDC.

    Plaintiff specifically argues that he was denied the right to file a civil action against the NWDC to challenge the denial of medical treatment (Dkt. #1 at pg. 4). But on March 3, 2006, Plaintiff filed a civil rights and Bivens Complaint challenging the food and diet conditions at the NWDC and alleging the denial of medical treatment. This case remains pending before this Court. See Hopper v. Morrison, et. al., 06-05058-FDB-JKA.

    Therefore, Plaintiff cannot establish that the access policy of the law library at the NWDC personally affected him resulting in an actual "injury in fact." Absent such injury, Plaintiff's claims must be dismissed. See Lewis, 518 US at 354. The Court should grant summary judgment in favor of the United States.

(Dkt. # 94, pages 8 to 11).

Plaintiff does not address defendants argument on this issue anywhere in his 61 page response. (Dkt. # 104). Defendants show that by policy plaintiff has a minimum of five hours library access per week. (Dkt. # 94, Exhibit C). In addition, since May of 2006 plaintiff has been given a minimum of ten hours per week. In fact plaintiff currently averages twenty four to twenty seven hours per week in the law library and in addition to doing his own legal work he has time to help others. (Dkt # 94 page 9).

Plaintiff alleges he was hindered in filing cases. (Dkt # 104). The record placed before the court by defendant's directly contradicts plaintiff's assertions. Defendant's list seven federal action plaintiff has filed since his incarceration began at the INS Facilty. (Dkt # 94, 9 and 10). In addition, plaintiff has listed other cases he is pursuing in California, The Ninth Circuit, and in other District Courts. See, complaint, (Dkt. # 1, page 5) See, also, amended complaint (Dkt. # 11, page 7). While plaintiff complains he could not file an action addressing his medical issues the record shows plaintiff in fact filed such a claim. See, Hopper v Morrison *et al.*, CV 06-5058FDB.

Plaintiff now argues he was denied the ability to pursue an action in the Pierce County District Court because the law library did not have form summons. This issue is not properly before the court as it was not alleged in the amended complaint. (Dkt. # 11). Further, plaintiff was able to file his complaint in Pierce County District Court. Thus, he had access to the court. His allegation that the Pierce County District Court dismissed this action because he did not provide summons does not reflect on his ability to access the library and defendants are entitled to dismissal of this claim. Defendants show plaintiff has suffered no actual injury on this claim and defendant's motion on this issue should be **GRANTED**.

REPORT AND RECOMMENDATION
Page - 7

      2.    <u>Contents of the law library</u>.

A persons right of access to courts does not include unhindered or perfect access. Defendants quote from the Supreme Court holding from <u>Lewis v Casey</u> is instructive.

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration. Id. at 355.

<u>Lewis v Casey</u>, 518 U.S. 343, 355 (1996).

Here, plaintiff alleges he was unable to file a case challenging medical treatment or conditions, but the record reflects he filed a civil rights claim regarding that issue. See, <u>Hopper v Morrison</u> *et al.*, CV 06-5058FDB. Thus, plaintiff does not show actual injury.

Plaintiff alleges in his responsive briefing he was unable to file a motion with the Ninth Circuit for filing a second or successive habeas petition because the law library does not contain the court rules. (Dkt. # 104. Page 45). Review of the library information on file seems to confirm plaintiff's allegations. The Ninth Circuits rules, and in particular Circuit rule 22-3 which sets forth the requirements for a motion to file a second or successive petition is lacking. Defendants have not adequately addressed this argument. The motion for summary judgment as to sufficiency of the law library should be denied on this limited issue.

Plaintiff's allegations regarding a tort action in Pierce County District Court fail to state a claim and do not preclude summary judgement for a number of reasons. This allegation was not raised in the complaint or amended complaint. (Dkt # 1 and 11). Defendants were not placed on notice that this issue was being litigated as part of this action. Further, like a slip and fall case, this action is a state tort action. The issue is not a federal constitutional claim regarding conditions of confinement or a challenge to the fact or duration of confinement. The court notes that an action of this nature could have been framed as a constitutional issue and filed in Federal Court.

No law library should be expected to contain forms and rules for every conceivable action an incarcerated person wishes to file. The library must however, contain the rules and information as to how a person goes about challenging there fact or duration of confinement or the conditions of the confinement.

This ruling should not be considered as an endorsement that the contents of the library is constitutionally adequate. While defendants list the contents of the library, (Dkt. # 94, page 11), they

REPORT AND RECOMMENDATION
Page - 8

provide no authority for the proposition that the contents are adequate. The record demonstrates that this plaintiff was not hindered or prevented from filing actions regarding his conditions of confinement or attacking his incarceration with the exception of the argument that the library does not contain the Ninth Circuit Rules of Appellate Procedure. Plaintiff claims he was prevented form filing an application to file a second or successive petition because of this information not being in the law library. As to all other content of the library issues, plaintiff's claim fails.

3. <u>Telephone access</u>.

Plaintiff argues the phone system has denied him access to courts and is therefor constitutionally infirm. (Dkt. # 11). He also alleged in his amended complaint that he has a free stranding and separate right to confidential phone calls with counsel, consulates and embassies and other entities under the Fourth and Sixth Amendment. (Dkt. # 11).

Plaintiff lists seventeen alleged problems in the phone system. These limitations are:

1. The system disallows calls to some consulates.
2. The system disallows calls to be completed to some consulates.
3, The system denies access to an operator.
4. The system will not allow for leaving messages.
5. The system will not allow leaving of messages even if the attorney has a voice mail that states it will accept the calls.
6. That when plaintiff's calls are to counsel or consulates his constitutional rights are being violated.
7. Plaintiff cannot access directory assistance.
8. The system charges too much, 17¢ a minute.
9. The system charges too much for collect calls.
10. The system will not allow plaintiff to reach attorneys who advertise using a toll free number.
11. The system denies the ability to reach government agencies and elected officials where it cuts off before the call can be answered.
12. The system denied the ability to receive new numbers through an intercept system if a number has been changed.

13. The recording that calls will be monitored or recorded violates the Attorney/Client privilege.

14. There are no other phones available for detainees to use.

15. The system cuts off after three buttons are pressed.

16. The system has a built in lag time before the call begins and many people hang up believing the call is a "prank" call.

17. The system shuts off after only five rings.

(Dkt. # 11, pages 10 through12).

Defendants address plaintiff's argument in the context of access to courts and note plaintiff cannot show actual injury. (Dkt # 94, page 12 and 13). The court agrees that plaintiff cannot state claim for denial of access to courts based on the phone system as he does not show any actual injury.

Defendants do not address all the issues in the amended complaint. Issues regarding whether there is a free standing right to confidentiality or whether there is a free standing right to contact perspective attorneys, consulates, embassies, or bail bondsmen has not been addressed. Plaintiff raises the allegation he has such a right under the Fourth and Sixth Amendment.

Defendants motion on this issue should be granted in part and denied in part. Defendants should be granted leave to address the remaining issues in a subsequent summary judgment motion. Any such subsequent motion should address in detail what, if any, procedures are available for a detainee to use a non monitored "administrative phone." Defendants allegation that requests for access to administrative phones are processed within eight hours does not adequately address the issue. (Dkt. # 94, page 13).

4. <u>Photo copying</u>.

Defendants set forth the photo copy policy and aver plaintiff receives free photo copies for legal work as long as the copies are reasonable and necessary. (Dkt. # 94). They set forth evidence in affidavit form showing plaintiff makes five to seven requests per week and each request is for four to five copies of a document. The documents range from 10 to upwards of 160 pages. (Dkt. # 94 page 14).

Plaintiff fails to show this policy is unreasonable or that he has been in any way harmed by this policy. Defendants are entitled to summary judgment on this issue.

<u>CONCLUSION</u>

Defendant's motion for summary judgment should be **GRANTED IN PART AND DENIED IN**

REPORT AND RECOMMENDATION
Page - 10

**PART.**  Claims relating to a free standing right, unrelated to access to courts, to contact certain entities under the Fourth and Sixth Amendment were not addressed by the motion.  In addition plaintiff has alleged his right of access to courts was abridged by the lack of Ninth Circuit Court Rules.  Plaintiff alleges this deficiency prevent him from filing a motion for a second or successive petition with the Ninth Circuit.  The foregoing claims survive, all other claims should be dismissed.  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **October 27th, 2006**, as noted in the caption.

DATED this 27th day of September, 2006.

*/S/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge