1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VINCENT DANIEL HOPPER, AKA
ANTOLIN MARKS

            Plaintiff,

      v.

MICHAEL MENDELEZ,

            Defendant.

Case No.  C05-5680RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**November 16, 2007**

     This <u>Bivens</u> action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.   Plaintiff seeks damages and injunctive relief (Dkt. # 11, amended complaint).

     Before the Court is defendant's renewed motion for summary judgment (Dkt. # 141).  The court has considered Plaintiff's over length response and affidavit in support of his brief (Dkt. # 152, and 153).  Mr. Marks has been previously warned that his filings must comply with this Court's Local Rules.  After being warned, in this case, that over length documents would not be considered Mr. Hopper filed a 24-page response to the motion for summary judgment (Dkt # 152).  He had changed the font on his typewriter and used too small a font so that the document met the 24 page limit found in Local Rule 7.  His conduct violated Local Rule 10 (e)(1).  Mr. Hopper then re filed the document using the correct font and the pleading is 43 pages in length

(Dkt. # 155).  An order to show cause why Mr. Hopper should not be sanctioned will issue separate from this Report and Recommendation.  The court has also considered  Plaintiff's documents in his motion for judicial notice, (Dkt # 160),  and defendant's reply and the affidavit of Mr. Bennett (Dkt # 161 and 162).

The court will not consider several of plaintiff's other filings.  These are filings that are not allowed under the Local Rules of this court.  These pleadings include plaintiff's second response titled as a "reply" with exhibits (Dkt # 158), plaintiff's "supplemental response" (Dkt # 159), and plaintiff's second motion for "judicial notice" where plaintiff accuses witnesses of committing perjury (Dkt # 165). These filings will be referenced in the order to show cause that will issue separate from the Report and Recommendation.

On August 20, 2007, the court requested additional briefing on one issue and re noted defendant's summary judgment motion for September 21, 2007, (Dkt # 166).  Both parties responded (Dkt # 169 and 172, 173).  That order allowed for a reply to a response and Mr. Marks filed a reply with exhibits (Dkt # 178). On September 14, 2007, the court received a motion to file an amicus brief (Dkt # 171).  The summary judgment was re noted for October 12, 2007.  The motion to file an amicus brief has been granted.  This matter is now ripe for review.

<u>FACTS</u>

Plaintiff alleges his constitutional rights have been violated because the telephone policies do not allow for confidential communications with counsel, prospective counsel, consulates, and bondsmen (Dkt. # 11, page 4 and 10 amended complaint).  Plaintiff makes a number of specific contentions on pages 10 to 12 of the amended complaint in paragraphs A through Q. The contentions are that the phone system:

A.    Disallows calls to some consulates.

B.    Disallows calls to be completed to some consulates.

C.    Denies access to an operator.

D.    Denies the ability to leave messages.

E.    Denies the ability to leave messages even when the attorney being called specifically has a voice mail that states it will accept the phone call.

F.    Disallows calls to counsel or consulates, violating the constitutional rights of plaintiff.

G.    Denies the ability to reach directory assistance in order to gain the numbers of lawyers or bondsmen.

H.     The system charges 17 cents per minute where there is available bids that would significantly lower that price to five cents a minute or less.

I.     The collect call charges are usury as they are very expensive and prevent access to families and friends, sources of law or free legal assistance, and pro bono clinics which provide free or low cost legal assistance.

J.     It denies the ability to reach counsel who advertise using toll free numbers.

K.     It denies the ability to reach government agencies and elected officials where it cuts off before the call can be answered, or does not provide the ability to access the operator to overcome the shutting off of the phone.

L.     It denies the ability to receive new numbers through the intercept services when the number has been changed.

M.     The recording inviting a tape recorded message from the caller violates the Attorney/client privileges which are deeply routed in our American justice system, and it discriminates based on national origin, and other facts that apply to detainees in this case.  It prevents conversation and prevents access to counsel in that it prevents discussions with counsel who are far away and must have an inkling of the case before they travel the long distance to Tacoma Washington.

N.     It is possible that the defendants will claim that the telephonic message that the calls will be recorded is an implied consent device to allow the taping of calls.  However, the detainees are given no alternative to this recorded call system and, as a Fourth Amendment detainee, the law provides that the detainee has the right to such confidentiality.  Even when the person is taken to Intake where they are allowed to use another telephone, the officers are sitting right next to the detainee listening to every thing that is said.  Besides, there is no guarantee that there is confidentiality on the other telephone.

O.     It disallows access to the voice mail of attorneys as it cuts off after the buttons are pressed.

P.     It disallows access to any person as it has a gap of space on its recoding that causes the person to believe it is a prank call unless the persons waits [sic] for the gap to expire.

Q.     It shuts off after only five rings and indicates that the call was not answered when the call could be answered on the ninth ring.

REPORT AND RECOMMENDATION
Page - 3

1    (Dkt. # 11, pages 10 to 12).

2        Defendant Melendez moves for summary judgment and argues "The United States Constitution does

3    not provide for an unfettered right to use a telephone.  To state a constitutional claim, Plaintiff must allege that

4    the use of a phone is connected to another constitutional right." (Dkt # 141, page 1).

5        Defendant Melendez sets forth the policy on telephone access and what he inaccurately believed the

6    phone system allowed in May of 2007, (Dkt. # 141 Attached policy, Exhibit A).   The policy calls for direct

7    "free" calls to Immigration Court and the Board of Immigration Appeals, federal and state courts, consular

8    offices, legal service providers for either obtaining representation or to consult with counsel, and government

9    offices to obtain documents (Dkt. # 141, Exhibit A).

10        A national study by the Government Accountability Office, GAO, was conducted two months after the

11    defendant submitted his motion for summary judgment.  That study found pervasive telephone access problems

12    at INS facilities across the nation.  Plaintiff has placed the results of the study before the court and asked the

13    court to take judicial notice of the study (Dkt. # 160).  The court has granted that request (Dkt # 164).  The

14    report states GAO encountered significant problems when trying to contact consulates, pro bono legal

15    providers, and government offices.  The problems were centered around the pro bono calling system that was

16    intended to allow for "free" calls to these numbers.  The study supports plaintiff's contentions that the system

17    did not work when he tried to contact numerous consulates and the system hindered his attempts to contact

18    lawyers in an attempt to find one that would take his case.

19        Plaintiff contends the Northwest Detention Center where he is housed is "bound" to follow ICE

20    standards, The Washington Administrative Code, and the American Correctional Association's recommended

21    standards (Dkt # 152, page 1).  Plaintiff alleges any deviation from these standards or rules is a violation of his

22    constitutional rights. He shows that with a 15-digit calling restriction it is difficult to contact a consulate with an

23    automated system (Dkt # 152, page 3 and 4).  He also shows that calls to law firms or groups with an

24    automated answering system that accepts collect calls would not be completed.

25        Plaintiff argues he has a right under the Fifth Amendment to access to consulates, to an operator, to

26    leave messages, to directory assistance, and to access toll-free numbers (Dkt # 152, pages 4 to 7).  Plaintiff

27    challenges defendant Melendez's motion and contests the facts.  Plaintiff references several exhibits that are not

28    properly before the court.

Mr. Hopper filed over length documents early in this case and was warned in a Report and

Recommendation that he must comply with the court's Local Rules (Dkt #113).  The court stated:

> The defendants motion and combined memorandum is 15 pages long and complies with local rules regarding the length of motions.  See, Local Rule 7(e)(3).  Plaintiff has filed two documents in opposition to the summary judgment motion.  The first document is "Plaintiff's statement of undisputed facts in support of opposition to the Defendant's motion for summary judgment."  This document is 10 pages long and complies with the courts local rule limiting a response to a motion for summary judgment to 24 pages.  Plaintiff's second filing is a memorandum in opposition to summary judgement.  (Dkt. # 104).  This filing does not comply with the local rules for two reasons.  First, only one responsive pleading is allowed.  Second, the document contains 60 pages of argument while the local rules limit briefing to 24 pages.  See, Local Rule 7(e)(3).
>
> The court has considered plaintiff's filings.  **The plaintiff is warned that any other filing that is over length will not be considered without the prior grant of a motion to file an over length brief.  Further, filing of any further over length brief without prior approval may result in monetary sanctions.**

(Dkt. # 113, page 2, emphasis added).

Local Rules allow for a 24-page response to a motion for summary judgment.  See, Local Rule 7 (e)(3).

A party may attach as many affidavits or exhibits to a response as they want, as long as the exhibits or

affidavits are pertinent to the issues before the court.  Here, plaintiff filed a 43 page over length response (Dkt.

# 152 and 155).  Plaintiff then attempted to file 15 pages of additional briefing with multiple exhibits (Dkt #

158).  Plaintiff's exhibits are attached to the pleading the court ruled improper (Dkt. # 164).  The exhibits are

not properly before this court and given the courts prior warning the documents will not be considered. One of

these exhibits, a list with approximately 169 phone numbers plaintiff alleges he could not call, was again

submitted by plaintiff as part of his reply to the request for additional briefing (Dkt # 178, exhibit A). That list

is properly before the court.

Amicus, the Northwest Immigrant Rights Project,  files a brief supporting plaintiffs position that there

is a Due Process right to telephone use that requires confidential calls to potential attorneys (Dkt. # 171).

<u>THE SUMMARY JUDGMENT STANDARD.</u>

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the

nonmoving party fails to make a sufficient showing on an essential element of a claim on which the

1   nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

2       There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

3   rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

4   475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not

5   simply "some metaphysical doubt.").  See also Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a

6   material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge

7   or jury to resolve the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253

8   (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir.

9   1987).

10      The determination of the existence of a material fact is often a close question.  The court must

11  consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

12  preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,

13  809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving

14  party only when the facts specifically attested by the party contradicts facts specifically attested by the

15  moving party.  Id.

16      The nonmoving party may not merely state that it will discredit the moving party's evidence at trial,

17  in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809 F.2d at

18  630.(relying on Anderson, supra).  Conclusory, nonspecific statements in affidavits are not sufficient, and

19  "missing facts" will not be "presumed."   Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89

20  (1990).

21                              DISCUSSION

22      If the telephone system supplied to the Northwest Detention Center had complied with the ICE

23  policy, it would more than meet constitutional minimum.  The telephone system did not meet the

24  expectations set forth in policy.

25      In the first Report and Recommendation filed September 27, 2007, the court questioned whether

26  there is a freestanding right to access to a telephone for confidential calls either to prospective counsel or

27  to consulates (Dkt. # 113, page 9 and 10).  The court stated:

28          Defendants do not address all the issues in the amended complaint. Issues regarding
            whether there is a free standing right to confidentiality or whether there is a free standing

REPORT AND RECOMMENDATION
Page - 6

1  right to contact prospective attorneys, consulates, embassies, or bail bondsmen has not been
2  addressed.  Plaintiff raises the allegation he has such a right under the Fourth and Sixth
   Amendment.
3       Defendants motion on this issue should be granted in part and denied in part.
   Defendants should be granted leave to address the remaining issues in a subsequent
4  summary judgment motion.  Any such subsequent motion should address in detail what, if
   any, procedures are available for a detainee to use a non monitored "administrative phone."
5  Defendants allegation that requests for access to administrative phones are processed within
   eight hours does not adequately address the issue.  (Dkt. # 94, page 13).

6  (Dkt. # 113, page 10).

7       Defendants address the question in the renewed motion for summary judgment (Dkt. # 141).

8  Defendants state "[t]he United States Constitution does not provide for an unfettered right to use a telephone.

9  To state a constitutional claim, Plaintiff must allege that the use of a phone is connected to another

10  constitutional right." (Dkt # 141, page 1).

11       In considering this case the Court adopts the analysis and methodology used by the Ninth Circuit in

12  deciding Valdez v. Rosenbaum, 302 F.3d. 1039 (9th Cir. 2002).  In that case the court was addressing the

13  rights of a pre trial detainee.  The detainee had his telephone access removed except for confidential calls

14  to his criminal attorney.

15       The court in Valdez  first addressed a contention that a right existed under state statues to

16  telephone usage.  Plaintiff makes a similar argument in this case when he states that the Northwest Detention

17  Center is "bound" to follow ICE standards, The Washington Administrative Code, and the American

18  Correctional Association's recommended standards (Dkt # 152, page 1).  The Court in Valdez held Alaska's

19  statues did not create an enforceable liberty interest under the Fourteenth Amendment.

20       The Court recognizes that the Fourteenth Amendment does not apply to this action as the

21  defendant is not a state entity.  An analogous Fifth Amendment right exists with regard to federal actions.

22  For a law or rule to create a liberty interest two conditions must be satisfied: first, the law or rule must set

23  forth substantive predicates governing the decision; second, the law or rule must contain mandatory

24  language that "mandates a particular outcome" if the substantive predicates are met. Valdez, 302 F.3d at

25  1044; (quoting Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 462-63 (1989).  None of

26  the rules, polices, or standards cited by plaintiff contain language that mandates a particular outcome if the

27  telephone system does not contain the features in the rule or policy. Thus, the policy statements, state

28  rules, or recommended standards do not created any enforceable liberty interest in this case.

The Ninth Circuits analysis of the alleged right to use a telephone under the First Amendment is instructive.  The <u>Valdez</u> Court stated:

> Valdez next contends that the restriction on his telephone usage violated his right to freedom of speech under the First Amendment. We have previously "stated in dicta that 'prisoners have a First Amendment right to telephone access, subject to reasonable security limitations.' " <u>Halvorsen v. Baird</u>, 146 F.3d, 680, 689 (9th Cir.1998) *1048 (quoting <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir.1996)); see also <u>Johnson v. California</u>, 207 F.3d 650, 656 (9th Cir.2000); <u>Strandberg v. City of Helena</u>, 791 F.2d 744, 747 (9th Cir.1986). The genesis of this purported constitutional right to use a telephone is obscure. <u>See</u> <u>Halvorsen</u>, 146 F.3d at 689. Our cases have not identified the source of the right, and our pronouncements of its existence have been conclusory and unnecessary to the decisions.

<u>Valdez</u>, 302 F.3d at 1047 and 1048.  Here, there is no First Amendment consideration as plaintiff had the ability to make collect calls and had contact with the outside world.  The issues are whether he has a constitutional right to confidential calls to potential counsel, consulates, or counsel.

<u>Consulates</u>.

Plaintiff argues international treaty gives him a right to confidential calls with consulates.  Plaintiff places before the court portions of the Vienna Convention (Dkt. # 152, pages 4 and 5).  The first pertinent section states "[a]ny communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay."  This provision allows for the sending of letters to the consulate of the country where plaintiff claims citizenship.  It does not mandate telephone use or mandate the mail will be confidential (Dkt. # 152, page 4).  The second pertinent provision gives consular offices the right to "visit," "converse," and "correspond," as well as arrange for legal representation. Again, there is no mention of telephone use as a right.  This provision allows consulate personnel to physically see a detainee, speak with the person, write to him, and seek to obtain counsel or legal representation for the person.  Plaintiff's briefing does not support his position.

Plaintiff also argues he has a duty to aid in his removal from the United States and contacting consular offices of any country in the world is therefore a right.  Plaintiff fails to show this duty leads to any right to telephone use or that his contact with consulates is entitled to any confidential privilege.  Plaintiff's demand that he be allowed to make confidential telephone calls to any consulate in the United States to try to find a country that will take him is not an enforceable right under the United States Constitution.

<u>Prospective counsel</u>.

The facts of this case are narrow and therefore narrow the scope of the Courts analysis. Plaintiff is not being held on a criminal charge, and has presumably served any criminal sentence from prior convictions. Thus, Plaintiff's Sixth Amendment Right to counsel in a criminal context is not at issue. Deportation proceedings are civil in nature. Solano v.Godines, 120 F.3d 957, 960 (9th Cir. 1997). This does not mean plaintiff loses his right to confidential conversations with counsel where there is a client attorney privilege. The question presented in this section is whether plaintiff has an absolute right to call confidentially any attorney number he can find, including toll-free numbers for attorneys who advertise, when no prior client attorney relationship exists.

Amicus urges the court to find there is a constitutional right to contact prospective counsel confidentially by telephone so that detainees may obtain legal representation in his deportation proceedings (Dkt. # 171). Amicus argues a detainee's right to obtain counsel of their choice at their own expense is covered under the Due Process Clause (Dkt. # 171, page 3). The court agrees that the Due Process clauses of either the Fifth or Fourteenth Amendment provides a detainee the right to obtain counsel at there own expense in a deportation case. The court disagrees that this translates into an unfettered or unlimited right to use the telephone for confidential calls to make an initial contact or cold call attorneys in an attempt to find one that will represent the detainee.

This case does not deal with a situation where Mr. Marks asked prison officials to allow him to make one or two confidential calls in an attempt to find counsel. Mr. Marks demanded 169 numbers be placed on the "free" call list. The court believes the list submitted by plaintiff in his latest reply contains the numbers in question (Dkt # 178, exhibit). Applying the reasonably related to legitimate penological goal's test the court finds the Northwest Detention Centers actions in refusing Mr. Marks request is constitutional.

Prison or jail regulations that limit an inmate or detainee's constitutional rights are valid if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89(1987). The test has four factors. The four factors considered are: (1) Whether the regulation is rationally related to a legitimate and neutral government objective; (2) What alternative avenues remain open for an inmate to exercise the right impinged upon by the regulation; (3) The impact accommodation of the right will have; (4) If there are easy and obvious alternatives to the regulation that tend to show the regulation is an exaggerated

response.

Jack Bennett, Assistant Field Office Director, avers:

8.   Plaintiff may also make calls from a detainee telephone in the detention area where Officers are not present.  He may submit the name of his legal counsel and have the recording regarding monitoring and recording removed from that number.  The detainee telephones are equipped with 18-inch privacy panels to ensure confidentiality from other detainees.

9.   Plaintiff has asked that the recording be removed from detainee telephones for at least 169 telephone numbers.  But Plaintiff has not shown that any of these numbers are for his legal counsel.  If Plaintiff can show that these numbers are for his counsel, the recording will be removed.

(Dkt. # 162, page 2).  Requiring plaintiff to prove there is an ongoing client attorney relationship with a person before allowing "free" calls to the number furthers obvious legitimate objectives such as reducing work load and preventing fraud or abuse of the "free" call system. Mr. Marks request to allow "free" calls to 169 numbers is just such an abuse of that system. The first factor favors the defendant.

Alternatives remained open to Mr. Marks.  First, he could contact prospective counsel by letter.  The letters need not contain any details of his case and the issue of whether the letters need be treated as legal mail need not be addressed today.  By letter Mr. Marks could ascertain if a prospective attorney was interested in representing him and he could ask the attorney to reply and set up a time and date for a confidential call.

Mr. Marks would then have the documentation, by way of a letter, officials are demanding and the number would become a "free call" at least for the initial contact. Mr. Marks could also ascertain who among his fellow detainees had counsel if an attorney might be willing to take on his case.  He could then contact that attorney. Either of these alternatives would greatly reduce the numbers needed on the "free" call system and lessen the government's workload and concerns regarding telephone fraud. The second factor favors the defendant.

The workload and security issues involved in accommodating Mr. Marks request have not been briefed in any detail by the parties.  The government has set forth security and prevention of telephone fraud as the reasons for the telephone security system. These are legitimate, neutral, governmental goals. The third  factor favors the defendant.

The final factor also favors the defendant.  Plaintiff could simply establish initial contact by some other means of communication, prior to forcing government officials to place a number on the "free" call list.  Under the reasonably related test, defendant is entitled to Summary Judgment under this set of facts.

1       The next issue is confidential calls where a client attorney relationship exists.

2       <u>Calls to Counsel</u>.

3       Mr. Marks problem in contacting his attorneys during the time period when he was the subject of

4 removal proceedings is not properly the subject of a civil rights action.  Mr. Marks alleges "inability to

5 confer with counsels regarding his immigration case where he needed to inform counsels of matters that

6 ICE may not be allowed to privy to such as the whereabouts of Shauna Davis, her relatives, or others

7 where ICE will use that information against those persons,..." (Dkt. # 178, page 9).  When a person

8 confined by the government is challenging the very fact or duration of his physical imprisonment, and the

9 relief he seeks will determine that he is or was entitled to immediate release or a speedier release from that

10 imprisonment, his sole federal remedy is a writ of habeas corpus.  <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500

11 (1973).  In June 1994, the United States Supreme Court held that "[e]ven a prisoner who has fully

12 exhausted available state remedies **has no cause of action under § 1983 unless and until the conviction**

13 **or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas**

14 **corpus.**"  <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (1994)(emphasis added).  The court added:

15          Under our analysis the statute of limitations poses no difficulty while the state challenges are
          being pursued, since the § 1983 claim has not yet arisen. . . . [A] § 1983 cause of action for
16          damages attributable to an unconstitutional conviction or sentence does not accrue until the
          conviction or sentence has been invalidated.

17
<u>Id</u>. at 489.  "[T]he determination whether a challenge is properly brought under § 1983 must be made
18
based upon whether 'the nature of the challenge to the procedures [is] such as necessarily to imply the
19
invalidity of the judgment.' <u>Id</u>.  If the court concludes that the challenge would necessarily imply the
20
invalidity of the judgment or continuing confinement, then the challenge must be brought as a petition for a
21
writ of habeas corpus, not under § 1983."  <u>Butterfield v. Bail</u>, 120 F.3d 1023, 1024 (9th Cir.1997)
22
(*quoting* <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997)).
23
       Here plaintiff asks the court to find his right to counsel in deportation proceedings were violated by
24
the telephone system in place.  A finding in his favor would necessarily invalidate any finding from the
25
deportation proceedings.  Plaintiff is challenging the propriety of his deportation proceedings and a ruling
26
in his favor would imply his current incarceration and future deportation may be invalid.
27
       Thus, this action is barred by the favorable termination doctrine and the defendants are entitled to
28
dismissal without prejudice as plaintiff's cause of action has not yet accrued

1    <u>Other issues.</u>

2         Mr. Marks other issues relating to telephones such as not having an operator on the line, the

3    amount charged for calls, or the lack of directory assistance are frivolous and will not be discussed further.

4                                              <u>CONCLUSION</u>

5         For the foregoing reasons, Defendant's motion for summary judgment should be **GRANTED.**

6    Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall

7    have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.

8    Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v Arn</u>,

9    474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set

10   the matter for consideration on **November 16, 2006**, as noted in the caption.

11

12        DATED this 29 day of October, 2007.

13

14                                    <u>*/S/ J. Kelley Arnold*</u>
                                       J. Kelley Arnold
15                                     United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28